[Cite as *In re R.R.*, 2016-Ohio-8285.]

STATE OF OHIO      )            IN THE COURT OF APPEALS
                   )ss:         NINTH JUDICIAL DISTRICT
COUNTY OF SUMMIT      )

IN RE: R.R.                         C.A. No.       28197
       C.G.
       C.G.
       R.G.

                                  APPEAL FROM JUDGMENT
                                  ENTERED IN THE
                                  COURT OF COMMON PLEAS
                                  COUNTY OF SUMMIT, OHIO
                                  CASE Nos.     DN 15-03-150
                                                      DN 15-03-151
                                                       DN 15-03-152
                                                       DN 15-03-153

DECISION AND JOURNAL ENTRY

Dated: December 21, 2016

MOORE, Presiding Judge.

**{¶1}** Appellant, Rachael R. ("Mother"), appeals from a judgment of the Summit County Court of Common Pleas, Juvenile Division, that adjudicated her four children abused, neglected, and dependent and placed them in the temporary custody of Summit County Children Services Board ("CSB"). This Court affirms.

I.

**{¶2}** Mother is the natural mother of the four children at issue in this appeal: R.R., born April 27, 2003; C.G., born January 25, 2011; C.G., born January 5, 2012; and R.G., born April 26, 2013. The father of the oldest child is deceased and the father of the other three children did not appeal from the trial court's judgment.

**{¶3}** On March 10, 2015, Akron Police had responded to an unrelated report of domestic violence at the nearby home of Mother's aunt. The police first came to Mother's home

to look for the alleged perpetrator, but found no signs of domestic violence. While the police were at Mother's home, four adult males quickly left the home and the police later learned that the children's maternal uncle ("Uncle"), who also lived in Mother's home, had an outstanding warrant for his arrest for violating the conditions of his community control on a felony drug conviction. They returned to Mother's home to arrest Uncle and check on the welfare of the children.

{¶4} After the police arrested Uncle, Mother consented to a search of Uncle's bedroom to make sure that there were no drugs there. Although the record fails to reveal whether the police found any drugs in Uncle's room, they found several used syringes on the floor of his room and also observed that the home was unsanitary and otherwise unsafe. Consequently, they removed the four children from Mother's home pursuant to Juv.R. 6.

{¶5} The next day, CSB filed a complaint to allege that the children were abused, neglected, and dependent. In addition to concerns about the poor condition of Mother's home and Mother's ability to meet the children's other basic needs, the complaint alleged that Mother did not appropriately supervise her children and had often left them in the care of Uncle, whom Mother knew had a history of heroin abuse. Following adjudicatory and dispositional hearings before a magistrate, R.R., C.G., C.G., and R.G. were adjudicated abused, neglected and dependent and placed in the temporary custody of CSB. The trial court overruled Mother's objections to the magistrate's decision and independently entered judgment to adjudicate the children and place them in the temporary custody of CSB. Mother appeals and raises one assignment of error.

II.

## ASSIGNMENT OF ERROR

THE [TRIAL] COURT ABUSED ITS DISCRETION IN FINDING THAT THE CHILDREN IN THESE MATTERS WERE ABUSED, NEGLECTED AND/OR DEPENDENT AS ALLEGED IN [CSB'S] COMPLAINT AND AS DEFINED BY THE OHIO REVISED CODE AS THERE WAS INSUFFICIENT EVIDENCE PRESENTED BY [CSB] TO MAKE SUCH A FINDING AND THE FINDING WAS ALSO AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.

{¶6} Mother's sole assignment of error is that the evidence presented at the adjudicatory hearing failed to support the trial court's adjudication of these children as abused, neglected, and dependent. The trial court adjudicated the children as abused pursuant to R.C. 2151.031(B), neglected pursuant to R.C. 2151.03(A)(2), and dependent pursuant to R.C. 2151.04(C).

{¶7} R.C. 2151.031(B) defines an abused child as one who "[i]s endangered as defined in section 2919.22 of the Revised Code[,]" which prohibits the parent of a minor child from "creat[ing] a substantial risk to the health or safety of the child, by violating a duty of care, protection, or support." R.C. 2151.03(A)(2) defines a neglected child as one "[w]ho lacks adequate parental care because of the faults or habits of the child's parents, guardian, or custodian[.]" R.C. 2151.04(C) defines a dependent child as one "[w]hose condition or environment is such as to warrant the state, in the interests of the child, in assuming the child's guardianship[.]"

{¶8} The trial court heard clear and convincing evidence to support its conclusion that Mother created a substantial risk to the safety of her children, that they lacked adequate care because of her faults or habits and that, for those reasons, their environment warranted intervention by CSB to protect their best interests.

{¶9}  One of Mother's primary arguments is that CSB failed to prove that the children slept in a room that had no door handle, which would trap them in the room when the door was closed.  There was no clear evidence that children had ever been intentionally locked in their rooms, but even without that evidence, CSB presented clear and convincing evidence to support the trial court's adjudications of abuse, neglect, and dependency.

{¶10}  On the night that the children were removed, Uncle was arrested on felony drug charges.  Mother admitted that she knew that Uncle had a history of heroin use.  When discussing Uncle with one of the caseworkers, she referred to him as a heroin junkie and admitted that he lived in her home but, according to the caseworker, Mother did not seem to understand how Uncle's heroin use posed a risk to her children.

{¶11}  Another caseworker testified that Mother told her that she wanted to help Uncle so she gave him a place to stay after he was released from jail following a drug conviction.  She told the caseworker that Uncle had stopped participating in required drug treatment, but stated that she did not know that he would bring drugs into her home.  Mother told the caseworker that she had no control over Uncle or the other men who came and went from her home.  She also admitted that she left her children in the care of Uncle for an entire weekend and that, during that time, the children were also in the care of another man who had a criminal drug history.

{¶12}  According to Mother's aunt, Mother often left the children in the care of Uncle. The aunt testified that Uncle was not a suitable caregiver because he did not engage with the children and was often sleeping and she could not wake him when she came to check on the children.  When that had happened, the aunt would take the children to her home.

{¶13}  Mother conceded through her own testimony that she allowed Uncle to move in with her and her children immediately after his release from jail following a drug conviction.

She explained that she originally thought Uncle would follow through with required drug treatment, but she had become aware that he did not and that he needed to surrender himself. When asked about the four men whom police saw leave her home shortly before Uncle's arrest, Mother responded that she was not aware that anything illegal was happening in her home. She further explained that, although she had not checked Uncle's room recently, she had tried to be "vigilant" in searching his room to make sure that there were no drugs in her home.

{¶14} Police officers described Mother's home as cluttered and unclean. One officer testified that the upstairs hallway was filthy and covered with diapers and that he could not see the floor of the children's room. When the officers went upstairs, Uncle's bedroom was wide open and accessible to the children. The police found two uncapped, used syringes on the floor of Uncle's bedroom along with a spoon that was burnt with "corroded pools at the bottom of the basin[.]" The used syringes were found on the floor within 12 to 18 inches of children's clothing and a child's tea set. The police also found several unused syringes on the dresser and a plastic bag with a white powdery substance, but CSB failed to prove that the substance inside was drug-related. The officer who found the uncapped, used needles expressed concern that, even if they did not have drug residue on them, the needles posed a safety risk to the children, especially the three who were under the age of five. Moreover, although the syringes were not linked to illegal drug use by direct evidence, the trier of fact could make an inference through compelling circumstantial evidence, particularly given that Mother admitted that no one in the home had a reason to use syringes for any legitimate medical reason.

{¶15} Mother attempted to contradict the testimony of all of CSB's witnesses through cross-examination and her own testimony. Although Mother asserted that the police officers, the caseworkers, and her aunt were all lying about her and the condition of her home, it was for the

trier of fact to assess the credibility of the witnesses and resolve conflicts in their testimony. *See State v. Bennett*, 9th Dist. Lorain No. 12CA010286, 2014-Ohio-160, ¶ 59. It is apparent from the trial court's adjudication that it found the testimony of CSB's witnesses to be more credible than Mother's, which was within its province as trier of fact. *See id.* Because Mother has failed to demonstrate that the trial court's adjudication was not supported by the evidence adduced at the hearing, her assignment of error is overruled.

## III.

**{¶16}** Mother's assignment of error is overruled. The judgment of the Summit County Court of Common Pleas, Juvenile Division, is affirmed.

Judgment affirmed.

————

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellant.

CARLA MOORE
FOR THE COURT

WHITMORE, J.
HENSAL, J.
CONCUR.

APPEARANCES:

RONALD T. GATTS, Attorney at Law, for Appellant.

SHERRI BEVAN WALSH, Prosecuting Attorney, and HEAVEN DIMARTINO, Assistant Prosecuting Attorney, for Appellee.